POWHATAN MATTHEWS v. W. A. MYATT ET AL.

(Filed 11 October, 1916.)

1. **Instructions—Deeds and Conveyances—Limitation of Actions—Adverse Possession—Appeal and Error—Reversible Error.**

    Where the controversy over lands depends upon the true location of the disputed boundary line between adjoining owners, the plaintiff claiming both under a perfect paper title and by adverse possession to a certain marked line, and there is evidence to sustain them, both of these contentions are material, and should be properly passed on by the jury; and it is reversible error for the judge in his charge to confine the inquiry as to his adverse possession to the location of the boundary given in his deed.

2. **Instructions—Contentions—Appeal and Error—Reversible Error.**

    Where the trial judge correctly states the contention of a party upon a material phase of the controversy upon which he is entitled to an instruction, but fails to charge the jury in accordance therewith, it may leave them under the impression that the contention was not a correct one, and constitutes reversible error.

3. **Limitations of Actions—Deeds and Conveyances—Adverse Possession—Different Boundaries—One Lot.**

    Where the location of the true dividing line between adjoining owners is in dispute, the *locus in quo* lying between the lines contended for by the parties to the action respectively, and the plaintiff claims under his deed and also by adverse possession to a certain marked line, the plaintiff may treat the disputed and undisputed parts of the land as one lot, and upon proving sufficient adverse possession thereof, as a whole, it will ripen his title thereto.

CIVIL ACTION tried before *Connor, J.,* and a jury, at April Term, 1916, of WAKE.

The action was brought to recover a small strip of land about 5 feet wide, fronting on McDowell Street in the city of Raleigh.

The plaintiff claimed the land upon two grounds: First, that it was covered by a deed of James J. Litchford, administrator of John O'Rourke, the owner thereof, to Jonas Matthews, his ancestor, dated 11 November, 1868, and prior deeds connected therewith; and, second, that if the land was not conveyed by the said deeds, he has acquired title to it by the adverse possession of himself and those under whom he claims. The defendants denied the plaintiff's ownership of the land, and the *feme* defendant specially alleged ownership in herself by inheritance from her father, L. S. Perry, who, she says, was the owner of it at the time of his death. With respect to the claim of adverse possession set up by the plaintiff, the court charged the jury as follows: "The plaintiff says, further, that without regard as to how the lines may be located, or the corners may be located, according to maps, that he and those under whom he claims have been in the open, notorious, visible, exclusive, adverse possession of the strip of land for many years; that is, for many years, since 1868, and for years prior thereto; and he contends, gentlemen of the jury, that you ought to find that Jonas Matthews, when he took possession of this property under his deed in 1868, took possession of and held possession of the lot up to the fence which he contends that you should find was on this land; and that even if there had been an error in locating this line according to the maps, that he and those under whom he claims by adverse possession gained title, secured title to this strip." And again: "I instruct you, further, gentlemen of the jury, if you are satisfied by the greater weight of the evidence in this case that a deed was made to Jonas Matthews for this lot in 1868, that Jonas Matthews entered into possession of the lot described in this deed, that the lot described in the deed is the identical lot referred to in the pleadings and evidence in this cause, if you find from the evidence in the case that Dr. Perry was then living, and that he lived until 1872, and that Jonas Matthews continued in possession, and that at his death in 1912 the plaintiff here, Powhatan Matthews, as the devisee named in his will, went into possession of this lot, then I instruct you that your answer to this issue should be, "Yes; all.""

The jury returned the following verdict:

1. Is the plaintiff the owner and in the possession of the lot of land included within the red lines on the map made by R. B. Seawell, engineer, dated 20 April, 1916? Answer: "Yes; but not of 5-foot strip shown on map."

2. If so, did defendant trespass on said lot of land, as alleged in the complaint? Answer: "No."

3. If so, what sum, if any, is plaintiff entitled to recover of the defendants as damages for such trespass? No answer.

From the judgment rendered, plaintiff appealed.

*Peele & Maynard and Lauchlin McNeill for plaintiff.*
*R. N. Simms for defendants.*

WALKER, J., after stating the facts: The strip of land in dispute lies between two lines shown on the court map, which are 5 feet apart, the northern one of these lines being the line claimed by Mrs. Myatt as the true line dividing the lots of the parties from each, and the southern line of the two being the one claimed by Mr. Matthews as the true dividing line, according to their respective deeds. But Mr. Matthews contends that, even if he is mistaken as to the location of the dividing line, he and those under whom he claims have occupied adversely the disputed land, which was inclosed by a fence, for more than twenty years before this suit was commenced, and since the year 1868, when his father, who died in 1912, received the deed from Mr. Litchford. There was evidence of adverse possession according to the plaintiff's claim. The *locus in quo* is a part of a parcel of land fronting on North McDowell Street, which is owned by the parties to this suit, the plaintiff being the owner of the northern part and the defendant of the southern, with the dividing line in controversy.

If the court erred as to the location of the dividing line or as to the adverse possession, the plaintiff is entitled to another trial.

We are of the opinion that there was error in the charge as to adverse possession. The court correctly stated the contention of the plaintiff as to this feature of the case, but failed to charge the jury in accordance therewith, leaving them naturally under the impression that the contention was not a correct one. But we think there was error in the charge which was given and set out in the statement of the facts. It was too restrictive as to the possession, as it confined it to the lot described in the deed of 1868 by the words, "if the lot described in the deed is the identical lot referred to in the pleadings and evidence in this cause." If the jury found that plaintiff's lot was correctly described in the deeds and in the complaint, and the location of the dividing line should be according to his contention, there was no use in considering the adverse possession at all, because he would recover the land under his deed alone. The question of adverse possession became material only if the deed to plaintiff's father did not embrace the disputed land, and the line was located as claimed by the defendant. In

such event the plaintiff would necessarily lose, unless he could show an adverse possession of the disputed land, independent of any deed, sufficient to give him title. The jury have found that the dividing line is located as claimed by the defendant, and, therefore, an adverse possession by plaintiff of the land described in the deed to his father would not extend to the land in dispute, and plaintiff was therefore left without any instruction upon the legal effect of the adverse possession of the *locus in quo,* which, of course, excluded one of his two main contentions from the consideration of the jury, for they were instructed to consider only the possession of the lot as described in the Litchford deed of 1868, and not merely the possession of the part not covered by that deed, and claimed by the plaintiff because of the adverse possession of it for twenty years and more.

The charge as to adverse possession should have been given without reference to the deeds, as plaintiff did not claim under color, and the instruction as to adverse possession should, therefore, have been strictly confined to the disputed land. Of course, if the plaintiff had adverse possession of all, as one lot—both the disputed and undisputed parts—under known and visible boundaries for the requisite period, he would acquire title to the *locus in quo,* the same as if the adverse possession had been of the *locus in quo* alone; for he could merge all into one lot and his actual adverse possession could then be extended to all. But here the jury were told that they should confine their inquiry to the adverse possession of land described in the deed. It follows that if the deed did not cover the *locus in quo,* and the jury so found, the possession of the disputed land was not considered at all. This was an affirmative error. While the court charged upon adverse possession, it so narrowed the instruction that the proper view of the question was excluded, and the jury thereby left in ignorance as to the law upon this phase of the case. By instructing the jury that the adverse possession, to be available to plaintiff, must have been of the land covered by the deed—when the jury might have found, as they afterwards did find, that the deed did not cover the disputed land, and when there was evidence of the adverse possession of the disputed land itself—the court laid out of consideration material proof upon which the plaintiff relied, and this had a tendency to mislead the jury, and doubtless they were misled by it. We have held that such an instruction is prejudicial and reversible error. "A judge cannot so affirmatively charge the jury as to exclude from their consideration important evidence of either side bearing upon the material issue between the parties. When he fails to charge as to any particular phase of the case, his attention must be directed to the omission by a prayer for special instructions upon the matter thus over-

looked, or his failure to charge cannot afterwards be assigned as error; but when he so charges as to eliminate from the case a substantial part of it, which would necessarily prejudice one of the parties, it will be reversible error." *Rumbough v. Sackett,* 141 N. C., 495. The materiality of the error will be seen when an admission in the answer is taken into account. Answering the fourth paragraph of the complaint, defendant admitted that "the defendant W. A. Myatt was advised by his attorney that there were serious questions as to whether the statute of limitations had or had not barred the right of possession to a certain part of the land inherited by his wife, Columbia Myatt, his codefendant." The further fact, that the jury found against the plaintiff upon the question of the location as described in the deed, made the question of adverse possession, as to the *locus in quo,* an important one to him. The instruction as given was, no doubt, an inadvertence on the part of the learned judge, but it was just as harmful as if it had not been, and exception was duly taken to it by the plaintiff.

It is unnecessary to consider the other numerous exceptions of the plaintiff, as the error in the charge, as indicated above, entitles him to another jury.

New trial.