W. C. RYALS v. CAROLINA CONTRACTING COMPANY.

(Filed 7 May, 1941.)

1. **Highways § 19—Evidence of failure of contractor to place warning signs on highway under construction held to take issue of negligence to jury.**

Defendant contractor was engaged in widening an old highway, which was 18 feet wide, by constructing an additional strip of concrete 6 feet wide adjoining the old pavement on its western edge. The construction of the additional pavement had been completed except for an unfinished space 40 to 60 to 100 feet, at a point where a creek ran under the highway through a culvert, the surface of the unfinished space being 10 to 12 inches below the surface of the old pavement. The evidence tended to show that, as plaintiff approached this point on his right side of the highway, which was the east side thereof, a truck approaching from the opposite direction on its right side of the highway, suddenly turned to its left in the path of travel of plaintiff's car, causing plaintiff to run onto the shoulder of the road on his right and, in attempting to get back on the highway, to lose control and run off the highway on the left into the unfinished space and against the culvert, wrecking his car and causing personal injuries. Plaintiff's evidence tended to show that the unfinished space so blended with the road as to be unobservable until a motorist got within 40 or 60 feet of it, and that there were no warning signs of the danger. Defendants' evidence was to the effect that it had erected warning signs lighted by flambeaux on either side of the unfinished portion and at the cities constituting the terminus of each end of the project. *Held:* The questions of negligence, contributory negligence, intervening negligence, proximate cause and damage were for the jury upon the evidence, and the court's refusal to grant defendants' motion to nonsuit was without error.

2. **Trial §§ 29b, 31—**

C. S., 564, proscribes the judge in charging the jury from expressing an opinion as to the weight and credibility of the evidence, and prescribes that he declare and explain the law arising upon the evidence, and the two provisions are linked together and are of equal dignity, and the failure to observe either is error.

3. **Trial § 29b—**

C. S., 564, prescribes that the judge in charging the jury shall "state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon," and it is the duty of the court to do so without request for special instructions, and the failure of the judge to explain the law arising upon the evidence constitutes reversible error.

4. **Negligence § 20—Charge held erroneous in failing to declare and explain the law applicable to the evidence.**

In this action involving negligence, contributory negligence, intervening negligence, proximate cause and damage, the court in its charge to the jury correctly defined each of these terms, and properly placed the burden of proof upon the issues, and stated the respective contentions of the parties as to what the evidence tended to show relative to the issues and the respective contentions of the parties as to the verdict the jury should

return on each of the issues upon the facts which the parties contended the evidence established, and charged that the jury should apply the principles of law defined to the controverted questions. *Held:* The failure of the judge to declare and explain the law applicable to the facts as the jury may find them to be from the evidence constitutes reversible error.

DEVIN, J., concurs in result.

CLARKSON, J., dissenting.

SEAWELL, J., concurring in dissent.

APPEAL by defendant from *Frizzelle, J.,* at November Term, 1940, of JOHNSTON.

Civil action for recovery for injury allegedly resulting from actionable negligence of defendant.

In the trial court, the evidence, briefly stated, tends to show that on 12 October, 1938, the date of injury to plaintiff, U. S. Highway No. 301 —also numbered U. S. 70—between Smithfield and Selma in this State, had an old paved surface 18 feet in width; that defendant was engaged in constructing an additional strip of concrete 6 feet wide along and adjoining the west edge of said old pavement, and had finished same with exception of space 40 to 60 to 100 feet at the point where Buffalo Creek passes under the highway; that there was a concrete culvert under the highway through which the water of that creek flowed; that in said unfinished space the surface was 10 to 12 inches below the paved surface of the highway; that adjacent to this unfinished portion, the old pavement was intact to its full width, and open to traffic.

Plaintiff offered evidence tending to show that between seven and eight o'clock on the night of above date, while he was traveling north in his automobile, from Smithfield to Selma, at a rate of speed 30 to 35 miles per hour, along his right-hand side of the old pavement, and approaching Buffalo Creek, an unidentified truck traveling south from the direction of Selma toward Smithfield, at a rate of speed 25 to 30 miles per hour, on its right-hand side of the road, was also approaching Buffalo Creek; that each of them dimmed the lights on his vehicle; that suddenly the truck turned to its left side of the road, "coming across the corner of the road," into the lane in which plaintiff was traveling; that in order to avoid collision with the truck plaintiff drove his automobile on to the shoulder on his right side; that in doing so he lost control of it and in turning back on to the old pavement lost control and ran across the pavement into the said unfinished space against the culvert on his left side of the road, thereby wrecking his automobile and causing the injury of which complaint is made.

Plaintiff further offered evidence tending to show that while he knew that the road had been under construction, there were then no warning signs or lights at Smithfield to indicate to him, or at Selma to indicate

to the driver of the truck, that the road was still under construction; and that there were no barricades or lights at either end of the unfinished space in the strip on the west side of the road to warn of its existence; and that in approaching the place he assumed that it was completed.

Plaintiff further offered evidence tending to show that the unfinished space so blended with the road as to be unobservable to plaintiff and others traveling upon the highway, until within 40 or 60 feet of it.

On the other hand, defendant offered evidence tending to show that there were large signs it had placed at each end of the project, at Smithfield and at Selma, warning of danger on account of road being under construction, which signs were properly lighted by flambeaux, or Toledo torches; and that at Buffalo Creek there was a small barricade at each end of the unfinished portion and several feet in front of each there was a flambeau, or Toledo torch.

Plaintiff in his complaint alleges in substance that his injury was proximately caused by the negligence of defendant in failing to exercise ordinary care in the performance of its duty to provide adequate warning signs at the unfinished strip of pavement to indicate to the traveling public the danger there.

Defendant denies the allegations of negligence. On the other hand, defendant avers that proper warning signs, barricades and lights were provided, and pleads contributory negligence of plaintiff in bar of his right to recover.

The case was submitted to the jury upon issues as to negligence, contributory negligence and damage. From judgment on adverse verdict, defendant appeals to Supreme Court and assigns error.

*Wellons & Wellons and Royall, Gosney & Smith for plaintiff, appellee.*
*Abell & Shepard for defendant, appellant.*

WINBORNE, J. When the evidence in the record on this appeal is taken in the light most favorable to plaintiff, giving to him the benefit of every reasonable intendment, we are of opinion that the case is one for the jury. Hence, exceptions to refusal of the court below to allow defendant's motions, aptly made, for judgment as in case of nonsuit are overruled. But there is error in the trial below.

The exceptions to the charge and to the failure to charge are well taken and meritorious. They are directed (1) to that portion of the charge which reads as follows: "The court has stated to you and has defined to you as clearly as it could, the principles of law applicable to these controverted questions. You are to bear them in mind and apply them to the facts and the evidence in this case," and (2) to the failure of the court to declare and explain the law, particularly pertaining to negli-

16—219

gence, contributory negligence, concurring negligence, intervening or insulating negligence, and that relating to sudden emergencies arising upon the evidence in the case as required by the provisions of C. S., 564, which prescribes that the judge "shall state in a plain. and correct manner the evidence given in the case and declare and explain the law arising thereon."

It is appropriate to pause here and to note that this statute, C. S., 564, had its inception in the year 1796, in an act of the Legislature entitled "An act to secure the impartiality of trial by jury, and to direct the conduct of judges in charges to the jury." As thus originally enacted section one of the act reads: "It shall not be lawful for any judge, in delivering a charge to the petit jury, to give an opinion whether a fact is fully or sufficiently proved, such matter being the 'true office and province of the jury; but it is hereby declared to be the duty of the judge in such case to state in a full and correct manner the facts given in evidence, and to declare and explain the law arising thereon." Iredell's Law 1796, ch. 4, sec. 1. The provisions of this act, in substantially identical language, have been brought down through successive subsequent legislative enactments by which codifications of the law have been adopted. See Potters Laws of North Carolina (1821), Vol. 1, ch. 452, sec. 1; Revised Statutes (1837), ch. 31, sec. 136; Revised Code (1854), ch. 31, sec. 130; Code of Civil Procedure (1868), sec. 237; Battle's Revisal (1873), ch. 17, sec. 237; Code of 1883, sec. 413; Revisal of 1905, sec. 535; Consolidated Statutes of North Carolina, 1919, sec. 564. Charges in both civil and criminal actions are expressly included in the statute. See Code of 1883, sec. 413, and succeeding citations *supra.*

Thus, it is seen that for one hundred and forty-five years the Legislature of this State has seen fit to preserve this salutary statute, and, from time to time, to reiterate and approve its provisions of inhibition against the judge invading the province of the jury in the trial of an action, and prescribing his duty upon such trial with respect to the evidence and the law. The two provisions are linked together, and are of equal dignity. To fail to observe either is error. Moreover, referring to this statute in the case of *S. v. Newsome,* 195 N. C., 552, 143 S. E., 187, this Court, speaking through *Connor, J.,* said: "The wisdom of the policy upon which it was enacted and in accordance with which it has since been maintained as the law in this State is not for the courts to determine."

Furthermore, the decisions of this Court are uniform in holding that the failure of the presiding judge to declare and explain the law arising upon the evidence is and will be held for error. These are some of the cases: *S. v. Matthews,* 78 N. C., 523; *S. v. Rogers,* 93 N. C., 523; *S. v. Merrick,* 171 N. C., 788, 88 S. E., 501; *Hauser v. Furniture Co.,* 174 N. C., 463, 93 S. E., 961; *Nichols v. Fibre Co.,* 190 N. C., 1, 128 S. E.,

471; *Wilson v. Wilson,* 190 N. C., 819, 130 S. E., 834; *Watson v. Tanning Co.,* 190 N. C., 840, 130 S. E., 833; *Williams v. Coach Co.,* 197 N. C., 12, 147 S. E., 435; *Spencer v. Brown,* 214 N. C., 114, 198 S. E., 630; *Smith v. Bus Co.,* 216 N. C., 22, 3 S. E. (2d), 362; *Mack v. Marshall Field & Co.,* 218 N. C., 697, 12 S. E. (2d), 235; *Kolman v. Silbert, ante,* 134, 12 S. E. (2d), 915.

"The statement of the general principles of law, without an application to the specific facts involved in the issue, is not a compliance with the provisions of the statute." *Nichols v. Fibre Co., supra; Williams v. Coach Co., supra; Spencer v. Brown, supra; Mack v. Marshall Field & Co., supra.*

In *S. v. Matthews, supra,* it is said: "We think he (the judge) is required, in the interest of human life and liberty, to state clearly and distinctly the particular issues arising on the evidence, and on which the jury are to pass, and to instruct them as to the law applicable to every state of the facts which upon the evidence they may reasonably find to be the true one. To do otherwise is to fail to 'declare and explain the law arising on the evidence,' as by the act of Assembly he is required to do. C. C. P., sec. 237," now C. S., 564.

Speaking to the question in *S. v. Merrick, supra, Hoke, J.,* said: "The authorities are at one in holding that, both in criminal and civil causes, a judge in his charge to the jury should present every substantial and essential feature of the case embraced within the issue and arising on the evidence, and this without any special prayer for instruction to that effect. Charged with the duty of seeing that impartial right is administered, it is a requirement naturally incident to the great office he holds, and made imperative with us by statute law. Rev., 535," now C. S., 564.

In *Wilson v. Wilson, supra, Varser, J.,* stated: "This statute, C. S., 564, created a substantial legal right in the parties." *Nichols v. Fibre Co., supra; Williams v. Coach Co., supra; Spencer v. Brown, supra.*

The case of *Mack v. Marshall Field & Co., supra,* is strikingly similar to that in hand. There, *Schenck, J.,* writing for the Court, makes this pertinent observation: "A careful examination of the charge as it relates to the issue addressed to the actionable negligence of Marshall Field & Company (the first issue submitted) discloses that it is made up solely of statements of general principles of law, such as definitions of negligence and of proximate cause, and the contentions of the parties—with a proper placing of the burden of proof. There is no direct application by the court of the law to the evidence. This is a noncompliance with the statute."

In the present case it is appropriate to consider the charge in the light of the statutory duty thus imposed upon the presiding judge, and in the light of the factual situation in hand.

A reading of the charge discloses that as to the issue, "Was the plaintiff injured and damaged by the negligence of the defendant, as alleged in the complaint?" the court stated the rule of law as to burden of proof, gave a general definition of negligence and actionable negligence, that is, negligence, proximate cause and injury, and stated the rule of law as to duty of driver of motor vehicle to stop within the range of his lights. In other respects the charge consists of: (1) Statement of the contentions of plaintiff as to what the evidence tends to show relative to negligence of defendant, proximate cause, intervening negligence of operator of the truck, and injury to plaintiff, "so that, upon the evidence offered by him he contends you ought to be satisfied by its greater weight that his contentions are true and answer that issue 'Yes.'" (2) Statement that defendant contends that the jury ought not to find upon the evidence that defendant was "in any wise, or in any degree, negligent" and ought not to answer the issue "Yes," followed by statement of contentions of defendant as to what the evidence tends to show (a) as to the proper performance of its duty to plaintiff and others traveling upon the highway, in accordance with the rule of the prudent man; (b) as to the negligence of the truck as the sole cause of injury to plaintiff; and (c) as to principle of intervening negligence of the operator of the truck as the proximate cause of injury to plaintiff, upon all of which defendant contends the jury should answer the issue "No." (3) These instructions, in summation: "So that, gentlemen, ultimately it becomes a question of fact for you. (The court has stated to you and has defined for you as clearly as it could, the principles of law applicable to these controverted questions. You are to bear in mind and apply them to the facts and the evidence in this case.)" Exception. "If the plaintiff has satisfied you upon the evidence, and by its greater weight, that his allegations are true and correct that he was injured by the negligence of the defendant, then you would answer the first issue 'Yes.' If the plaintiff has failed to so satisfy you upon the evidence, by its greater weight, then you would answer the first issue 'No.'"

As to the issue of contributory negligence, the charge consists of: (1) A proper placing of burden of proof; (2) definition of and general principles of law relating to contributory negligence; (3) statement of the contentions of defendant, and of the plaintiff, followed by summation as to each similar to those given as bearing on issue of negligence.

While it was probably an oversight on the part of the presiding judge, the charge fails to give any instruction as to the law arising upon and applicable to the facts which the jury may find from the evidence. It fails to declare and explain the duties which the law imposed upon the defendant with respect to the matters involved in the allegations of negligence. It fails to instruct the jury as to the law with respect to the

breach of any of these duties, and the relation of such breach to the injuries as the proximate or concurrent cause thereof. It fails to state the duties imposed by law upon the operator of the truck with respect to any of the matters involved in the averments of intervening negligence, other than that pertaining to stopping within the range of his lights, or as to the law with respect to the breach of any of these duties, and the relation of such breach to the injuries to plaintiff as the proximate cause thereof. It fails to declare and explain the duties imposed by law upon the plaintiff with respect to any of the matters involved in the averments of contributory negligence. It fails to instruct the jury as to the law with respect to the breach of any of these duties, and the relation of such breach to his injuries, as the proximate or concurrent cause thereof.

These failures affect substantial rights of the parties, and are reversible error.

Also, defendant presents with force objections to the admission of evidence, which is the subject of exceptions 1, 2, 3, 4, 5, 13, and 14, and of exceptions 16, 17, and 18. But, as cause for the objection may not occur upon another trial, we deem it unnecessary to discuss them.

For error pointed out a new trial is ordered.

New trial.

DEVIN, J., concurs in result.

CLARKSON, J., dissenting: There is an old saying, "Put yourself in his place." We have here a man of fifty-four years of age, his automobile broken up and he seriously injured. The jury assessed his automobile damage at $250.00 and his injuries at $1,750.00. He says: "From then on I had a terrible pain in my feet and could not hardly walk and I have not since. . . . I cannot get around and travel to do business. I can't drive an automobile in the conduct of my business as I did before the injury and I can't walk to see prospects as I did before the injury. Those are the reasons I am unable to engage in that business." A new trial will perhaps bankrupt him. The plaintiff is a wrecked man and unable to do his ordinary calling in life, and this case is sent back on technical grounds. As said by *Chief Justice Ruffin* (hereinafter fully quoted), "A disease of the law."

In the main opinion it is conceded that there was sufficient evidence to submit the case to the jury. The granting of a new trial was on the ground that C. S., 564, was not complied with, in that the court below did not "state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon." The court below, in a charge of some 30-odd pages, taken as a whole, I think, is free from error or prejudicial or reversible error. The main opinion extracts dis-

connected portions of the charge. I quote copiously from the charge showing it was correct as a whole, and that there was no prejudicial or reversible error.

The issues submitted to the jury were the usual and simple issues submitted in a damage suit of this kind—negligence, contributory negligence and damage. The defendant incorrectly states that the court failed to apply the law to the evidence in the case. On the contrary, the record clearly shows that the court not only stated the rules of law correctly and fully, but applied these rules in detail to the evidence offered by each party. A reading of the full and careful charge will show that in stating the defendant's contentions the court expressly related the defendant's evidence *to the rules of law announced* and that a *similar course* was followed in stating the plaintiff's contentions.

The only exception made by defendant in this long and careful charge is as follows: "The court has stated to you and has defined for you as clearly as it could, the principles of law applicable to these controverted questions. You are to bear them in mind and apply them to the facts and the evidence in this case."

The court below in its charge set forth in detail plaintiff's allegations of negligence in his complaint against defendant, and in detail defendant's answer denying the material allegations of the complaint and defendant's plea of contributory negligence.

In the charge, after fully setting forth plaintiff's and defendant's allegations, in part, is the following:

"The plaintiff alleges that the defendant was negligent in that it left that section of the road, that strip of one hundred feet, fifty feet on either side of the culvert, unprotected, without proper safe-guard, and that it failed to erect and maintain any sort of warning barricade or lighting device, and the plaintiff alleges that the negligence of the defendant in these particulars was the proximate cause of the injury which he sustained to his person and the damage which was done to his car. . . .

"Now, the defendant denies that it was negligent in any of the particulars alleged, pointed out and complained of by the plaintiff, or otherwise. It denies entirely, and *in toto,* any negligence, either acts of omission or commission, on its part, and alleges that if the plaintiff were injured in his person, or to his person, and his property damaged at the time and place, that the injuries to the plaintiff, and the damage to his car, *were proximately caused by the sole and exclusive negligence of the operator of the approaching truck,* the defendant alleging that the truck approaching on the west side of the highway proceeding from the direction of Selma towards Smithfield was being operated in violation of a certain statute in this State regulating and governing the manner in which motor vehicles shall be operated, and further that the truck was

being operated at the time and place without the exercise of proper care and circumspection on the part of the driver of the truck; that he was not keeping a proper lookout, and that he was proceeding over and upon a heavily used highway without proper regard to the rights and to the safety of the general public, and particularly this plaintiff, the defendant particularly pointing out, alleging and contending that the operator of that truck was operating at such a speed that he could not bring his truck to a stop within the radius of his lights, and that therefore the operator of the truck was negligent, and that the owner of the truck, or the operator of the truck's negligence was the sole proximate cause of the injuries sustained by the plaintiff in this case; the defendant further alleging and contending that even if the jury should find that the defendant in this case was originally negligent in failing to erect and maintain barriers, or to place and maintain warning lights, which negligence the defendant denies, *that the negligence of the truck driver was a new, independent, efficient and wrongful negligence, intervening after the original negligence on the part of the defendant prior to the injury, thereby isolated and insulated the negligence of the defendant, thereby in law becoming the sole tort-feasor, and its negligence the sole proximate cause of the plaintiff's injury.*

"The defendant makes the further allegation and contention that if the jury should find that the defendant was negligent in one or more, or all of the particulars alleged by the plaintiff, and if the jury should further find that the negligence of the truck driver did not intervene and become a new and independent efficient and wrongful cause of the plaintiff's injuries, that the plaintiff himself was guilty of contributory negligence; that he himself failed to exercise proper care, and was proceeding over and upon a highway at that time and place in such a manner as to constitute the operation of his car and his conduct with respect thereto, a negligent operation and contributing factor to the injuries which he sustained at that time and place, and that because of the contributing negligence of the plaintiff he is barred from recovery in this action.

"Now, upon these allegations and upon the evidence offered in this case, both by the plaintiff and the defendant, and upon the contentions of the respective parties based upon the allegations and evidence there arise certain questions or issues for you gentlemen to answer. The first one of these questions or issues is: Was the plaintiff injured and damaged by the negligence of the defendant as alleged in the complaint?

*"The burden of that issue is upon the plaintiff,* to satisfy you upon the evidence, by its greater weight, that his allegations are true and correct.

*"Negligence is the failure to perform some duty imposed by law.* It is doing other than, or failing to do, in a given situation, what a reason-

ably prudent person would have done under the same or similar circumstances when charged with a like duty. It is sometimes defined as a want of proper care, proper care being that degree of care which a reasonably prudent person would use under the facts and circumstances and surroundings and when charged with a like duty. And in given case in determining whether proper care has been used by the person sought to be charged with negligence, reference must be had to the facts and circumstances of the person so charged, and by the circumstances surrounding him and the parties at the time, and his conduct must be judged by the influence which those facts and surroundings would have had upon a person of ordinary prudence in shaping his conduct under similar circumstances, and when charged with a like duty, or similar duty.

"But every negligent act does not involve liability upon a defendant. The mere fact that there has been an accident upon the highway, whether a collision between two motor vehicles, or between a motor vehicle and a horse drawn vehicle, or between a motor vehicle and a railroad locomotive train inflicting injuries or even producing death, does not necessarily involve liability upon any one. *In order to fix a defendant charged with negligence it is incumbent upon the plaintiff to establish by the greater weight of the evidence actionable negligence. And in order to establish actionable negligence, in order to make it a case of actionable negligence it is incumbent upon the plaintiff to establish by the greater weight of the evidence: (first)* that there has been a failure on the part of the defendant to exercise proper care, proper care being that degree of care which a reasonably prudent person would have used under the same or similar circumstances when charged with a like duty, and *(second)* that the failure of the defendant to exercise proper care was the proximate cause of the plaintiff's injury, the cause which produced the injurious results in continuous sequence, and without which the injuries would not have been inflicted or sustained, and one from which any person of ordinary care could reasonably have foreseen that such injuries would have resulted, or at least that results of an injurious character would flow from the negligent acts of the defendant." (Italics mine.)

There could not be a clearer charge on actionable negligence than the above. "The plaintiff has offered evidence which he contends tends to support that issue, and to establish his contention that he was damaged as to his property, and injured as to his person by the negligence of the defendant in several particulars."

Then the court below gives the evidence of plaintiff in detail, in some six pages. It places the burden of proof correctly on plaintiff on this issue, defines negligence, actionable negligence and proximate cause and

sets forth: "The plaintiff contends that if the negligence of the truck driver and the resulting injury were reasonably foreseeable by the plaintiff in the exercise of ordinary care, then the negligence of a truck driver, if the truck driver were negligent, in the opinion of the jury, and in the conclusion of the jury, would not be a new and independent and efficient proximate cause, so as to isolate or insulate the negligence of the plaintiff, and to save the defendant from liability for the injuries sustained by the plaintiff as a proximate result of the defendant's original negligence, and that, therefore, the jury should answer the first issue Yes.

"Now, gentlemen, involved in that first issue, of course, is the consideration of the question of whether the plaintiff was negligent or not. Even if the jury should find that an accident occurred there, even if the jury should find that an accident occurred as the proximate result of the defendant's negligence, as alleged, there is the further question involved of whether or not the plaintiff was injured. The burden as to the whole issue, every phase of it, every aspect of it, every consideration to be determined in that issue, the burden is upon the plaintiff, as to every aspect of it, the burden rests upon the plaintiff to satisfy you upon the evidence and by its greater weight."

On the part of defendant, the charge goes on: "Now, the defendant, Gentlemen, contends that you ought not to answer the issue Yes, and that you ought not to find upon the evidence in this case that the defendant was in any wise, or in any degree, negligent.

"The Court calls your attention to the fact that the plaintiff in this action is an individual, a citizen of Johnston County, and that the defendant in this case apparently is a corporation, and a non-resident of this State. Of course, Gentlemen, the Court has a right to assume, and does assume, that you will not let a consideration of that sort enter into your deliberations and affect them in the slightest degree. That would be a subversion of the very foundation of the principles of justice itself if a jury were to consider one moment a question of that sort for the purpose of arriving at the truth involved in the controversy in this action, this controversy, and to influence or color or affect in any manner to any extent the same sort of fair and impartial consideration that a resident of Johnston County.

"The law contemplates that jurors are too honest and too honorable, and have too much reverence and veneration for justice in the administration of the law to be influenced by a consideration of that kind. Try the case, Gentlemen, upon the evidence and the law, fairly and impartially and reach a conclusion which an honest and faithful analysis, after weighing all of the evidence, convinces you is the correct conclusion.

"The defendant has offered evidence which it contends should satisfy you, not by the greater weight of the evidence, because the burden is not

upon the defendant—that the defendant at all times exercised proper care in the construction of the strip of pavement extending from Smithfield to Selma, and that upon the beginning of the construction at the initial point, that is both at the starting point in Smithfield and at the starting point in Selma, it placed warning signs and illuminated those signs by flare lights—I don't remember the technical name, I believe they were called flambos. A number of witnesses, Gentlemen, have testified that those warning signs were placed there, describing them in detail, my own recollections of the evidence being that those warning signs were from four to six feet tall, several feet wide, yellow background with black letters, and that at night they were lighted by flares. . . .

"The defendant has offered evidence which it contends tends to show that the defendant was not negligent either in any of the several particulars alleged in the complaint, or otherwise, and that if the plaintiff did sustain painful and serious, or even permanent injuries on that occasion that the defendant was not in anywise responsible therefor or chargeable therewith; that the plaintiff's injuries were either caused solely by the negligence of the truck driver or by the joint negligence of the truck driver and the plaintiff himself.

"The defendant contends that it has offered evidence tending to show that the truck driver at the time and place was violating the laws of North Carolina, in that he was operating his truck in violation of a statute enacted by the General Assembly of this State intended and designed to promote, protect and preserve life, limb and property upon the streets and highways of this State. The law does make it the duty, mandatory upon him and every other person in the operation of a motor vehicle at any time at any place at night to so operate it and to operate it at such speed that it can be stopped, brought to a dead stop within the radius of its lights. *In a recent discussion of the duty resting upon a driver of a motor vehicle the Court has this to say:*

"'The general rule under such circumstances is thus stated in Huddy on Automobiles: It was negligent for the driver of the automobile to propel it in a dark place in which he had to rely on the lights of his machine at a rate faster than enabled him to stop to avoid any obstruction within the radius of his lights, or within the distance which his lights would disclose the existence of an obstruction. If the lights of the automobile would disclose an obstruction only ten yards away it was the duty of the driver to so regulate the speed of his machine that he could at all times avoid an obstruction within that distance. If the lights of his machine would disclose objects further away than ten yards, and the driver failed to see the object in time, then he would be conclusively presumed to be guilty of negligence, because it was his duty to see what he could have seen.'

"And further in that connection: 'It is not enough that the driver of an automobile be able to begin to stop within the range of his lights, or that he exercise due diligence after seeing an obstruction upon the highway. He should have so driven that he could and would discover it and be able to perform the manual acts necessary to stop and bring his automobile to a complete stop within the range of his lights. When blinded by the lights of an oncoming car so that he could not see the required distance ahead, it was the duty of the driver within such distance from the point of blinding to bring his automobile to such control that he could stop immediately, and if he could not then see, he should have stopped. In failing to so drive he was guilty of negligence which patently caused, or contributed to the collision with the defendant's truck.'

"Now, Gentlemen, the defendant in this case has offered evidence which it contends has to do in its application of that principle of law; that the evidence in this case tends to show that notwithstanding that the road was illuminated and barriers located by the defendant so as to warn and caution travelers over that road and to protect and secure them against them, that the operator of the truck which was approaching the plaintiff's car on the occasion was negligent for the reason that he was operating his car at a speed too fast for him to do the manual acts necessary to stop it, and to stop it before running into that dirt section, and before he found it necessary in a sudden emergency, and having breached that duty to so do, and having failed to do so, because he had breached his duty in the operation of his car pulling his truck directly across the road in front of the plaintiff, jeopardizing the plaintiff in that manner. The defendant contends that the jury ought not to have any trouble in reaching the conclusion that was not only a cause, but the sole cause of the injury to the plaintiff and the damage to his car, and that was a negligent act on the part of the driver of the truck which the defendant could not reasonably anticipate, and that the law does not require, or the rule of common sense does not require a person to assume that another person using a highway is going to recklessly and heedlessly violate the law of the land, and that he is going to operate his car at a careless and reckless rate of speed, or in a manner characterized by want of circumspection or lack of due regard for the rights and safety of others.

"The defendant therefore contends that the other principle of law which the court read to you a few minutes ago, or cited and discussed with you a few minutes ago extensively *as to a new and independent and efficient and wrongful negligence by a third party applies to the facts in this case as disclosed by the evidence,* and all of the evidence, and the defendant contends particularly from the evidence offered by the defend-

ant, that here was a new, and independent factor and element of negligence intervening and constituting itself the sole efficient proximate cause of the injuries and damage to the plaintiff and his property, and that thereby, and therefore, even if the jury should find that the defendant had been negligent in any particular that *the new intervening negligence isolated and insulated the defendant's negligence by becoming a new and independent cause, efficient cause and, therefore, and thereby the sole proximate cause of the injuries to the plaintiff.*

"The defendant contends that the jury ought to be satisfied upon the evidence in this case that even if there were no lights, and even if there was no barricade at that point, if there were present any circumstances such as alleged and testified to and contended by the plaintiff, to-wit: a broken place in the pavement of 100 feet that the dirt in that place was of such character and nature and resembled it so closely that it harmonized and resembled the color of the pavement; that it was the duty of the driver of that truck when he could not see that pavement clearly and understandingly, to modify and slacken the speed with which he was operating that truck, and if necessary, actually to stop it before proceeding in that broken place, and that his failure to do so was negligence, and that that negligence on the part of the truck driver, under the principle of law of a new and independent factor, became the sole proximate cause of the plaintiff's injuries, and that the jury should answer the issue No.

"The defendant makes the further contention that if you should not accept the defendant's theory and contention in this case, and if you should reach the conclusion that the defendant was negligent in one or more of the particulars alleged, that you should also reach the conclusion that the driver of the truck was likewise negligent, and that upon that aspect of it, the negligence of the defendant and the negligence of the truck driver each became a proximate cause of the injury sustained by a plaintiff.

"The defendant makes the further contention that you should find that while there may be more than one proximate cause, that in this case you ought to find that the negligence of the truck driver was the sole proximate cause, and therefore, that the first issue should be answered No, for the reason that if the truck driver's negligence intervened after the defendant's negligence started, and if it occurred prior to the injury and continued up until the time of the injury, then the negligence of the defendant in the first instance has not the effect of rendering the defendant liable to the plaintiff in this case. So that, Gentlemen, ultimately it becomes a question of fact for you.

"*The Court has stated to you and has defined for you as clearly as it could, the principles of law applicable to these controverted questions. You are to bear them in mind and apply them to the facts and the evidence in this case.*" (Italics mine.)

The court below gave defendant's contentions, in some four pages, and charged: "There is just one more statement with respect to contributory negligence that I desire to call to your attention, and that is that there is no difference, no substantial difference, between negligence and contributory negligence, only negligence on the part of the plaintiff is called contributory negligence. If the defendant has satisfied you upon the evidence, and by its greater weight, that the plaintiff did by his own negligence, contribute to his injuries then you would answer the second issue Yes. If the defendant has failed to so satisfy you, you would answer it No."

The only exception, of five lines, made by defendant, is as follows: "The Court stated to you, and has defined for you as clearly as it could, the principles of law applicable to these controverted questions. You are to bear them in mind and apply them to the facts and the evidence in this case."

The court below did what it said it had done: It declared and explained the law as to negligence, contributory negligence, concurring negligence, intervening or insulating negligence, and that relating to sudden emergencies applicable to the controverted questions of fact. For more detail on this aspect defendant should have requested a prayer for instruction.

The main opinion incorrectly states that the court failed to apply the law to the evidence in the case. On the contrary, the record clearly shows that the court not only stated the rules of law correctly and fully, but applied these rules in detail to the evidence offered by each party. A reading of the full and careful charge will show that *in stating the defendant's contentions the court expressly related the defendant's evidence to the rules of law announced* and that a *similar course* was followed in stating the plaintiff's contentions.

The main opinion impinges the court's instructions to the jury "to apply the law to the evidence," and is a novel criticism on this record. It is the duty of the jury to do just this very thing under our jury system; and I believe it can be truthfully said that this type of instruction is given the jury by the presiding judge in three-fourths of the cases that are tried in North Carolina. It is well settled that, if the defendant desired more explicit instructions on any particular point, it was its duty to ask for the same at the trial. *In re Will of Beale,* 202 N. C., 618; *Lightner v. Raleigh,* 206 N. C., 496; *Sherrill v. Hood, Comr. of Banks,* 208 N. C., 472; *Wilson v. Casualty Co.,* 210 N. C., 585; *Falls v. Moore,* 210 N. C., 839.

The defendant did not make such request; and not even in its brief has it pointed out to the Supreme Court in what particular the trial court failed to properly state the defendant's contentions or failed to

apply the defendant's evidence (as well as the plaintiff's) to the rules of law announced by the court.

In other words, the defendant's position is what has been so frequently designated by this Court as "a broadside exception" to the charge, which is uniformly held to be insufficient. *Arnold v. Trust Co.,* 218 N. C., 433.

The truck driver's actions result from an emergency created by the defendant's negligence. Under such circumstances the defendant is responsible for the results of this emergency conduct. *Norris v. R. R., 152 N. C., 505; Parker v. R. R., 181 N. C., 95; Odom v. R. R., 193 N. C., 442; Nash v. R. R., 202 N. C., 30.*

Leaving out of account the theory of "outrunning his lights," which the court below charged correctly, the defendant failed to show any insulating negligence. On the contrary, the undenied facts disclose affirmatively that, at the exact point where the truck driver could first see the obstruction, he turned to the left in an effort to avoid the same. The defendant has not and cannot point out any negligence in this conduct of the truck driver. It is not sufficient for the defendant to speculate as to what *might* have been the condition of the truck or the truck driver, when the evidence discloses conduct that was entirely reasonable.

I see no more merit in the defendant's contention that an accident of this kind could not have been foreseen by the defendant. In this connection it is well settled that it is not necessary to foresee the exact occurrence, but only to foresee that some injury of the same character would result. *Drum v. Miller, 135 N. C., 204; Hudson v. R. R., 142 N. C., 199; Hall v. Rinehart, 192 N. C., 706; Speas v. Greensboro, 204 N. C., 239.*

· In *Bank v. Yelverton,* 185 N. C., 314 (320), *Adams, J.,* for the Court, said: "Exceptions were entered on the ground that the court did not explain to the jury the legal principles and present the contentions involved in the case as required by sec. 564 of the Consolidated Statutes. His Honor instructed the jury generally on the essential features of the case and if under these circumstances the plaintiff desired that any particular phase of the testimony or contentions be presented or more fully explained it should have submitted special prayers for instructions to such effect. *S. v. Merrick, 171 N. C., 795; S. v. Thomas, 184 N. C., 759; Jarrett v. Trunk Co., 144 N. C., 301; Butler v. Mfg. Co., 182 N. C., 552.*"

The evidence in the instant case shows that a person traveling along the highway with lights could not see the excavation until he was "right on it." The evidence also discloses that there was nothing to put the approaching vehicle on notice that there was or was likely to be any such excavation. The open space "blended with" the road; and to a driver of a vehicle it appeared like one continuous stretch of pavement until it was "too late to stop."

I see no prejudicial or reversible error.

In 5 C. J. Secundum, "Appeal and Error," p. 1331, part sec. 1848, the following well-settled principle is stated: "The judgment of the lower court will be affirmed where there is no error, or where the record as it stands, does not clearly and affirmatively show error of any kind. Likewise the judgment will be affirmed where the record does not *clearly and affirmatively show reversible, material, substantial, or prejudicial error.*" (Italics mine.)

In *In re Ross,* 182 N. C., 477 (478), we find: "In fact, it is now the settled rule of appellate courts that verdicts and judgments will not be set aside for harmless error, or for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling complained of was erroneous, but that it was material and prejudicial, amounting to a denial of some substantial right. Our system of appeals, providing for a review of the trial court on questions of law, is founded upon sound public policy, and appellate courts will not encourage litigation by reversing judgments for slight error, or for stated objections, which could not have prejudiced the rights of appellant in any material way. *Burris v. Litaker,* 181 N. C., 376; *In re Edens' Will, ante,* 398, and cases there cited. Again, error will not be presumed; it must be affirmatively established. The appellant is required to show error, and he must make it appear plainly, as the presumption is against him. *In re Smith's Will,* 163 N. C., 464; *Lumber Co. v. Buhmann,* 160 N. C., 385; *Albertson v. Terry.* 108 N. C., 75. See, also, 1 Michie Digest, 695, and cases there cited under title 'Burden of Showing Error.' "

*Varser, J.,* in *Perry v. Surety Co.,* 190 N. C., 284 (292), says: "We do not presume prejudicial error and the burden is upon the appellant to show, not only error, but that it is prejudicial. The judgment will be affirmed if, upon the entire record, no substantial right to the appellant has been denied, and even if irregular, when the correct result has been accomplished. The appellant is not, upon any view of the record, entitled to recover," citing a wealth of authorities.

*Schenck, J.,* in *Pulverizer Co. v. Jennings,* 208 N. C., 234 (235), says: "We have examined with care the many objections to the charge of the court, but upon reading the charge as a whole we are left with the impression that it was complete and fair to the defendant, and in accord with the theory upon which the case was tried. It is said in *Murphy v. Coach Co.,* 200 N. C., 92, 'In a long charge, we do not think technical matters contended as errors, fished out of the charge, can be held as reversible or prejudicial error, when on the whole the charge is correct.' And it is further said in *Leggett v. R. R.,* 173 N. C., 698, 'The charge to a jury must be considered as a whole in the same connected way in which it was given, and upon the presumption that the jury did not

overlook any portion of it. If, when so construed, it presents the law fairly and correctly, it will afford no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous.' "

In *R. R. v. Thrower,* 217 N. C., 77 (82), we find: *"Devin, J.,* in *Collins v. Lamb,* 215 N. C., 719 (720), for the Court says: ' "Verdicts and judgments are not to be set aside for harmless error, for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, amounting to a denial of some substantial right." *Wilson v. Lumber Co.,* 186 N. C., 56 (citing many authorities.)' "

In *Moss v. Brown,* 199 N. C., 189 (192), it is written: " 'In *Bank v. Rochamora,* 193 N. C., at p. 8, quoting numerous authorities, the law is thus stated: "Where the instruction is proper so far as it goes, a party desiring a more specific instruction must request it." This applies to subordinate elaboration, but not substantive, material and essential features of the charge. C. S., 564.' *McCall v. Lumber Co.,* 196 N. C., at p. 602."

N. C. Code, 1936 (Michie), sec. 565, is as follows: "Counsel praying of the judge instructions to the jury, must put their requests in writing entitled of the cause, and sign them; otherwise the judge may disregard them. They must be filed with the clerk as a part of the record." This section has continuously followed C. S., 564, from ancient times, showing the two should be continued together. These subordinate features of the controversy must be requested in prayer for instructions in apt time. *Hauser v. Furniture Co. (Hoke, J.),* 174 N. C., 463 (466); *Murphy v. Lumber Co.,* 186 N. C., 746 (748-9); *Dulin v. Henderson-Gilmer Co.,* 192 N. C., 638 (641); *Insurance Co. v. Edgerton,* 206 N. C., 402 (411); *School District v. Alamance County,* 211 N. C., 213 (226).

N. C. Const., Art. I, sec. 19, reads: "In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." Article I, sec. 35: "All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, *and right and justice administered without sale, denial, or delay."* (Italics mine.)

In *S. v. Hedgecock,* 185 N. C., 714 (720), we find: *"Chief Justice Ruffin,* in *S. v. Moses,* 13 N. C., at p. 463, as far back as 1830, in reference to the Act of 1811, ch. 809 (now C. S., 4623), said that it was 'enacted that in all criminal prosecutions in the Superior Court it shall be sufficient that the indictment contain the charge in a plain, intelligible, and explicit manner; and no judgment shall be arrested for or by reason of any informality or refinement, when there appears to be sufficient in

the face of the indictment to induce the court to proceed to judgment.' And he added these memorable words, which express the best judicial thought of his day, and which since has obtained everywhere: 'This law was certainly designed to uphold the execution of public justice, by freeing the courts from those fetters of form, technicality, and refinement which do not concern the substance of the charge, and the proof to support it. Many of the sages of the law had before called nice objections of this sort a disease of the law, and reproach to the bench, and lamented that they were bound down to strict and precise precedents, neither more brief, plain, nor perspicuous than that which they were constrained to reject. In all indictments, especially in those for felonies, exceptions extremely refined, and often going to form only, have been, though reluctantly, entertained. We think the Legislature meant to disallow the whole of them, and only require the substance, that is, a direct averment of those facts and circumstances which constitute the crime, to be set forth.' " *S. v. Switzer,* 187 N. C., 88 (96).

The modern conception of "Law and Justice" is that cases should be decided on their merit and if on the whole charge there is no prejudicial or reversible error, the verdict and judgment thereon should not be disturbed. Technicalities, refinements and attenuated and cloistered reasoning should be relegated to the dark ages of the law. In seeking for justice, errors that are not material should not be fished out of a record to grant a new trial, subjecting litigants to be harassed by a series of trials and often destroying their rights on technical grounds—in this way they are sometimes unable to bear up under the law's delay. The law requires juries to be "men of good moral character and sufficient intelligence." N. C. Code, *supra,* sec. 2312. Then, again, we have splendid, capable and conscientious Superior Court judges. In a trial they, as it were, shoot on the wing, we on the ground; therefore, where on the whole charge no material aspect is overlooked, we should not hunt for immaterial and nonprejudicial error.

C. S., 564, is hoary with age—dead in the Federal Courts and discarded in most of the states, and a crippled germ in others. To cling to it, where there is no prejudicial or reversible error, is to shackle a court to a "living death," denying justice on the merits of a case, when the whole record shows no prejudicial or reversible error.

An orderly procedure, and the statute, *supra,* in regard to prayer for instructions intended that litigants before the charge of the court should hand up prayers for instruction covering the incidental and subordinate features of the controversy. The court below could then charge the law applicable to the facts and the disputed attitudes of the case could be considered. To sit in silence and then on appeal fish out of the charge matters that perhaps had not affected the verdict and pick up C. S.,

564, should not be permitted by this Court unless some serious, prejudicial, and reversible error had been made going to the very heart of the controversy.

The late lamented *Justice Brogden,* in *Horne Corp. v. Creech,* 205 N. C., 55 (63-4), wrote: "In cases of this type the eye of the law sinks deep into the situation and dealings between the parties to discover the heart of the transaction. The law moves along straight lines to ascertain, establish and enforce fundamental justice between men and does not dissipate its energies in fencing with legal fictions, boxing with legal shadows, and wrestling with legal puppets."

SEAWELL, J., concurring in dissenting opinion: My conception of the proper functions and limitations of the statute leads me to dissent from the majority opinion. I wish to make it clear that I make no assault on the law or the duty of the Court to enforce it. But I am impressed with the danger to the administration of justice involved in creating standards not within the reasonable contemplation of the statute, which affect the character and amplitude of instructions to the jury.

I am of the opinion that the charge reveals no prejudicial error.